WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 2020 Processing LLC, | No. 14-CV-00950-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| True Auto LLC, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff 2020 Processing LLC's Motion to Enforce Settlement (Doc. 65). The Motion is fully briefed, including a Response by Defendant True Auto LLC ("True Auto") to the Motion to Enforce (Doc. 69), and a Reply by Plaintiff to that Response (Doc. 70). The Court now rules on this Motion.

## I.  MOTION TO ENFORCE

### A.  Background

This case arises out of a trademark and copyright dispute. Eventually, the parties began negotiating a settlement, and this Motion seeks enforcement of an alleged agreement to settle pursuant to LRCiv 83.7.

During negotiations, Defendant drafted and made a settlement proposal to Plaintiff on June 21, 2014. (Doc. 69, Ex. A). The draft proposed:

> 2) Within 30 days from the date of the Stipulation, True Auto will immediately remove the term TRUE AUTO PROTECTION from its website and from all marketing and advertising, including any electronic links on the web. The

> foregoing promise is limited to the term TRUE AUTO PROTECTION and is not applicable to the term TRUE AUTO VEHICLE BREAKDOWN PROTECTION and True Auto may use the term TRUE AUTO VEHICLE BREAKDOWN PROTECTION in association with its goods and services.

(Doc. 69-3, ¶ 2). According to one of Defendant's attorneys, Mr. Bumgardner, the June 21 proposal's only contemplated change was "to change the banner on the website (www.trueautoprotection.com) from 'TRUE AUTO PROTECTION' to 'TRUE AUTO VEHICLE BREAKDOWN PROTECTION.'" (Doc. 69-2, ¶ 4). On June 23, 2014, counsel for Plaintiff responded with proposed revisions to the June 21 proposal. (Doc. 69-4). The proposed revisions by Plaintiff's counsel were as follows:

> 2) Within 30 days from the date of the Stipulation, True Auto will immediately remove the term TRUE AUTO PROTECTION from its website and from all marketing and advertising, including any electronic links on the web. The foregoing promise is limited to the term TRUE AUTO PROTECTION and is not applicable to the term TRUE AUTO VEHICLE BREAKDOWN PROTECTION and True Auto may use the term TRUE AUTO VEHICLE BREAKDOWN PROTECTION in association with its goods and services. True Auto may continue to use the URL address/domain of "trueautoprotection.com" and associated emails for forwarding purposes only for a period of six months from the date of this Stipulation, after which the URL address shall no longer be utilized. In no event shall the URL address/domain "trueautoprotection.com" be transferred or assigned to any other individual or entity.

(Doc. 69-4, ¶ 2). Mr. Bumgardner claims that during a phone call with Plaintiff's counsel on June 27, 2014, he stated "True Auto will never accept any restrictions on the use of its domain name or email address." (Doc. 69-2, ¶ 6). Mr. Bumgardner also alleges that he made Plaintiff's counsel aware that Defendant rejected the June 23 counter proposal, and that Defendant would continue preparing for the impending preliminary injunction hearing if the domain name language was not removed. (Doc. 69-2, ¶ 6).

Another of Defendant's attorneys, Mr. Rastegar, alleges that during a July 22, 2014, phone call with Plaintiff's counsel he asked whether the "case would go away" if Defendant "[went] back to the old website banner", to which Plaintiff's counsel responded that it would "go a long way." (Doc. 69-1, ¶ 3).

On July 22, 2014, after the phone call, Defendant emailed Plaintiff a proposed

settlement agreement as follows:

> 1) Defendants will agree to remove the term TRUE AUTO PROTECTION from its website and from all marketing and advertising, including any electronic links on the web. Defendants may, however, use the term TRUE AUTO VEHICLE BREAKDOWN PROTECTION.
> 2) Defendants will not provide any service contracts or administration services for any program associated with or marketed under the term TRUE AUTO PROTECTION.

(Doc. 65, Ex. A). On July 23, 2014, Plaintiff's counsel responded by asking Mr. Rastegar to inquire whether Defendant would be willing to reimburse a portion of Plaintiff's attorneys' fees as part of the settlement. (Doc. 65 at 11). On July 28, 2014, Rastegar responded, saying "[True Auto] is not willing to make any payments to [Plaintiff]. He is willing to do items 1 and 2 listed below." (Doc. 65 at 10) ("items 1 and 2" referring to the paragraphs in the July 22 proposal).  On July 29, 2014, Plaintiff's counsel responded, "[m]y client has accepted the proposed settlement offer, which I have incorporated into the attached stipulation and order for filing with the Court." (Doc. 65 at 10).

The stipulation attached to Plaintiff's July 29 email included the provisions from the July 28th offer, and further provided:

> 1) No later than ten business days following the entry of an Order approving this Stipulation, Defendants agree to remove the term/phrase TRUE AUTO PROTECTION from any website owned or utilized by Defendants and from all marketing and advertising, including any electronic links on the web. Defendants may, however, use the term TRUE AUTO VEHICLE BREAKDOWN PROTECTION; and
> 2) Defendants agree not to provide any service contracts or administration services for any program associated with or marketed under the term TRUE AUTO PROTECTION.

(Doc. 65, Ex. B). On July 31, 2014, in response to the July 29 stipulation, Defendant submitted a modified version of the stipulation. The modified stipulation provided:

> a) No later than ~~ten business~~ thirty calendar days following the entry of an Order approving this Stipulation, Defendants agree to remove the term/phrase TRUE AUTO PROTECTION from any website owned or ~~utilized~~ controlled by Defendants and from all marketing and advertising, including any electronic links

on the web (provided Defendants control such marketing and advertising). ~~Defendants may, however, use the term/phrase TRUE AUTO VEHICLE BREAKDOWN PROTECTION~~; and

b) Defendants agree not to provide any service contracts or administration services for any program associated with or marketed under the term/phrase TRUE AUTO PROTECTION; and

c) Notwithstanding anything in this Stipulation to the contrary 1) Defendants may use the term/phrase TRUE AUTO VEHICLE BREAKDOWN PROTECTION, and 2) Defendants may continue to use the domain truautoprotection.com. Such use may include a website at this domain, sending and receiving emails from this domain, and using this domain in its marketing and advertising.

(Doc. 65, Ex. C). Following this modified stipulation, in an email dated August 4, 2014, Plaintiff's attorney rejected paragraph c.2 concerning use of the domain name trueautoprotection.com. (Doc. 65, Ex. A). However, Plaintiff's attorney stated that Plaintiff was agreeable to the other changes Defendant made. (*Id.*)

Plaintiff filed a Motion to Enforce Settlement based on its belief that a binding and enforceable settlement exists and should be enforced. (Doc. 65 at 6)

## B.    Legal Standard

"No agreement between parties or attorneys is binding, if disputed, unless it is in writing signed by the attorney of record or by the unrepresented party . . . [however] in the interests of justice the Court shall have the discretion to reject any such agreement." LRCiv 83.7.

A federal district court's inherent authority allows it to enforce agreements that settle litigation before it. *See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) ("This circuit also recognizes a trial court's inherent enforcement power."); *Calli v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). State contract law governs whether the parties "reached an enforceable agreement settling the federal and state law claims." *Wilcox  v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014); *see Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993) ("a settlement agreement is governed by principles of state contract law . . . even where a federal cause of action is 'settled'").

In Arizona, "settlement agreements, including determinations as to the validity and

scope of release terms, are governed by general contract principles." *Emmons v. Superior Court*, 192 Ariz. 509, 512 (Ariz. Ct. App. 1998) (citing *Hisel v. Upchurch*, 797 F.Supp. 1509, 1517 (D. Ariz. 1992)). General contract principles require, at a minimum, an offer, an acceptance, consideration, and adequate specification of terms so that obligations can be ascertained to have an enforceable contract. *Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. Ct. App. 1991). Arizona law requires a mirror image acceptance of an offer to consummate an agreement. *See Clark v. Compania Ganadera de Cananea*, *S.A.*, 385 P.2d 691, 697 (Ariz. 1963). Thus, the addition of materially different terms to an agreement results in a purported acceptance instead being treated as a counteroffer containing the additional terms. *See United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 422–23 (Ariz. Ct. App. 1983) (Citing *Clark*, 385 P.2d 691).

"It is well-established that before a binding contract is formed, the parties must mutually consent to all material terms. A distinct intent common to both parties must exist without doubt or difference, and until all understand alike there can be no assent." *Hill–Shafer P'ship v. Chilson Family Trust*, 799 P.2d 810, 814 (Ariz. 1990) (en banc). "A manifestation of assent sufficient to conclude a contract is not prevented from doing so because the parties manifest an intention to memorialize their already made agreement in writing." *Rennick v. O.P.T.I.O.N. Care Inc.*, 77 F.3d 309, 313–14 (9th Cir. 1996) (citing Restatement (Second) of Contracts § 27 (1981)). However, "if a party knows that the other intends no obligation to exist until the written agreement is made, the earlier manifestation does not constitute a contract." *Rennick*, 77 F.3d at 314 (citing Restatement (Second) of Contracts § 27 comment b). For a court to enforce the non-executed contract, the court must be able to determine that there was a manifestation of mutual assent. *Johnson*, 967 P.2d at 612. Thus, the Court must look to the surrounding circumstances to determine whether the parties intended their non-executed agreement to be immediately effective. *Rennick*, 77 F.3d at 314; *see also Johnson*, 967 P.2d at 612.

1    **C.   Analysis**

2        Plaintiff moves to enforce an alleged settlement agreement it entered with

3    Defendant. Particularly, Plaintiff asserts that it entered into a binding contract with

4    Defendant based on an email exchange from July 22, 2014 to August 4, 2014.

5        Plaintiff asserts that all of the required elements of a binding settlement are

6    present. (Doc. 65 at 5).  Plaintiff claims that the email dated July 28, 2014 constituted an

7    offer by Defendant. (*Id.*) Furthermore, Plaintiff claims that it "accepted the offer . . . and

8    incorporated the terms into a proposed stipulation." (*Id.*) Thus, Plaintiff argues that an

9    offer, acceptance, and consideration were present making the agreement, which was

10   signed by attorneys of record, binding pursuant to LRCiv 83.7. (*Id.*)

11       Defendant does not dispute that the July 28 email was an offer. However,

12   Defendant contends that Plaintiff did not accept the offer as tendered. (Doc. 69 at 10).

13   Instead, Defendant argues that the stipulation attached to Plaintiff's July 29 email

14   contained material changes to the July 28 offer, making it a counteroffer. (Doc. 69 at 11).

15       In the stipulation however, Plaintiff made two notable changes to the original

16   terms as set forth in the July 22 email. First, Plaintiff included a ten day deadline in

17   which Defendant would have to remove the term TRUE AUTO PROTECTION from its

18   website. Second, it expanded the set of websites from which Defendant was to remove

19   the term/phrase TRUE AUTO PROTECTION (originally it was just the website

20   Defendant owned, but the stipulation included websites Defendant "utilized"). (Doc. 65

21   at 15). Defendant rejected both of these alterations.

22       Plaintiff's addition to the stipulation, which would require Defendant remove the

23   term/phrase TRUE AUTO PROTECTION from websites it utilized, materially altered

24   the scope of the proposed agreement. Based on the correspondences, it appears

25   Defendant's intentions in negotiation were limited to potential changes to its website. For

26   example, Defendant's "only contemplated change was to change the banner on the

27   website (www.trueautoprotection.com)." Also, Defendant's counsel asked whether the

28   case would go away if Defendant's website went back to the old banner. Furthermore,

Defendant expressly rejected the added language, replacing "utilized by [True Auto]" with "controlled by [True Auto]."

By introducing the "utilized by" language, Plaintiff enlarged the scope of the agreement to websites which are not owned or controlled by Defendant. For example, a website utilized by the Defendant could potentially include a search engine not under Defendant's control. If such a website contained the term/phrase TRUE AUTO PROTECTION, Defendant would be in violation of the alleged agreement. Based on Defendant's actions throughout negotiation leading up to the proposed stipulation and its response to the stipulation, it is evident that Defendant did not intend to expand the agreement to cover any websites it did not own or control. Thus, the Court finds that the stipulation attached to plaintiff's July 29 email was not a mirror image acceptance of the offer. Therefore, the Court finds that the stipulation attached to the July 29 email was a counteroffer.

In response to the July 29 counteroffer, Defendant reviewed and modified the stipulation. (Doc. 65, Ex. C). Defendant added a third provision which preserved its use of the domain trueautoprotection.com. (*Id.*) In the June 21 proposal, Plaintiff made clear that it did not intend to allow continued use of said domain name beyond some relocation period, in this case six months. (Doc. 69-4, ¶ 2). Thus, the addition of the third provision by Defendant was a material alteration to the agreement and not a mirror image acceptance. Therefore, the modified stipulation attached to Defendant's July 31 email rejected the July 29 counteroffer and constituted a new counteroffer. In response to this counteroffer, Plaintiff conceded some of the modifications, such as changing the ten business day requirement to a thirty calendar day requirement and changing the word "utilized" to "controlled." (Doc. 65, Ex. A). However, in the same email, Plaintiff's counsel explicitly rejected language in the third provision. (*Id.*) Plaintiff's response was therefore another counteroffer, which was never accepted.

Based on the foregoing, the Court finds that no binding agreement was created at any point during the correspondences at issue, nor was there a clear mutual assent

between the parties as to the terms of settlement. The Court recognizes a series of counteroffers and rejections resulting in no enforceable settlement agreement. Therefore, the Court denies Plaintiff's Motion to Enforce Settlement.

**II.    CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Enforce Settlement (Doc. 65) is DENIED.

Dated this 25th day of November, 2014.

James A. Teilborg
Senior United States District Judge